Chief Justice Robertson
delivered the opinion of the court.
In 1785, Patrick Shields procured a patent for four hundred acres of land; and in 1786 he obtained another patent for two thoussand acres, adjoining the four hundred acres.
in the fall of the year 1786, P. Shields settled on bis four hundred, acres, claiming the possession of both tracts. In the spring of 1787, he removed from the land, but returned to it in 1795, when he settled on the two thousand acre tract, on which he lived until 1797, when he died; and on which his widow and children have ever., since resided. In 1796 he sold, by verbal contract, one hundred acres of'the large tract, without designation of boundary to Cloyd, who, in that year, settled upon the land, and who, or those holding under him, continued to occupy it, until Alexander Shields, *13 one of the sons of P. Shields, several years after his father’s death, took possession of it. Alexander Shields occupied the land without restriction as to quantity, and enjoyed the use of the whole two thousand acres, so far as he chose to use it as one of the. heirs of the patentee., until his death in 1814; and his widow has retained the possession and use, in the same way, ever since.
On the 14th of November, 1812, sundry writs of “venditioni exponas” were issued against the estate of the widow and heirs of P. Shields, for small sums, amounting in the aggregate to $167 83 cents, in virtue of which the sheriff^ to whom they were directed, sold, for the amount due upon them, to Allen Stewart and Morgan Jbryan, two of the execution creditors, one thousand acres of the two thousand acres; “five hundred acres to be taken off the most northwardly side of (the widow’s) dower-right, and live hundred acres to be taken off the most northwardly side or end of the said Alexander Shield’s part.”
In 1813, on the application of Stewart and Brayan, commissioners were appointed by the county court, to make partition of the land, and to assign the widow’s dower, she never having procured or applied for an assignment. The commissioners assigned the dower, and made the partition, so as to suit the sheriff’s sale; and thereupon, together with the sheriff, they made a deed to Stewart and Bryan, for five hundred acres of the part so assigned to the widow, and for four hundred and nenety-two acres of the. part allotted to Alexander Shields, the first parcel including the residence of the widow and the latter, that of Alexander!
Bryan and Stewart, thus armed, forthwith brought an ejectment against the widow and Alexander Shields, and _obtained a judgment of eviction against the former. The sheriff returned on the habere facias, which was issued on this judgment, that he had turned the widow out, and put Stewart and Bryan in.
But it appears from the proof in the record, that as soon as she was put out, the lessors departed, and she instantly resumed the possession, and has ever since retained it. Two of the heirs of P. Shields lived with their mother, and they were not parties to the ejectment. It does not appear whether they were minors or not, when the judgment was obtained,
*14 In 1802/ Stewart”seiiled on sixty-five acres" of land which he had purchased from Lynch, within the boundary of the, two thourand acres patented to P. Shields, and afterwards rold it to Batts, who continued to occupy it until since 1814. The patent of Lynch was posterior to that of Shields, and the sixty-five acres did not interfere with the enclosures of Alexander Shields, or the widow of P. Shields. After the execution of the habere facias, Stewart cut fome house logs, and tapped some sugar trees on the land which he purchased at the sheriff’s sale, but made no improvement or any other kind of entry upon it, so as to disturb the possession of Alexander Shields, or that of the widow of P. Shields.
In 1825, Hall settled asa tenant under the claim of Stewart, on the land allotted to the widow by the commissioners, and included in the deed by the Sheriff and the commissioners; the place where he settled, had never, before been in the possession of Stewart or any other person under his claim, except so far as the cutting of the house logs, and the tapping of the sugar trees, and the execution of the haba c facias, might be considered as constituting possession; and the only claim, which Stewart, or any person holding under him, ever had to the place settled on by Hall,- was derived from the sheriff’s sale, and the habere facias possessionem*
Alexander Shields having died intestate in 1814, this ejectment was brought in 1827, against Hall, on a demise by' the heirs of Patrick, and of Alexander Shields. On the trial, such instiuctions were given by the circuit court, as left the jury no alternative. In obedience to the instiuctions of the court, a verdict was returned for lía] 1 and Halts, who was also made a defendant; and, judgment was rendered accordingly.
The defendants, having shown that a patent to Sam», uel Oldham, of a prior date to that of P. Shields, cov' ered Shield’s two thousand acres, (but from which they had derived no claim whatever, hut the right to defend themselves under it as an outstandingtitle which might show, that the lessors had no right of entry) obtained from the court, an instruction to the jury which, in substance and effect, directed them that Oldham’s patent protected the defendants, and that therefore, they had U right to a verdict,
Execution against the es ate of the widow and heirs; the sheriff sells "500 acres of land to be taken off the most northwardly siae of the widow’s dower;” and 500 acres to be taken off of the most northwardly side of the part belonging to tbe heirs; tbe sales invalid.
Before assignment of dower, tho1' widow be in possession of mansion house, it is only in quarantine, which does not extend to woodland except for estovers, she has no transferable legal interest; she cannot make a lease; nor maintain an ejectment; nor is dower transferable by sale under execution; an assignment of dower after sale under execution, cannot render sale valid Bower can only be assigned by the county court upon the application of the widow or heirs, or some one having a legal interest in the land.
*15 The court also overruled seyeral motions for instruction rancíe by tbs pioiiHifli, vrhlch ivill not be particularly noticed, as the. general view which, we shill take of the ca.-;e, will necessarily- include and dispose of them all.
The circuit court co:recLly rejected the sheriff’s deed; except so far as the execution of the hab-.rz facias may have broken the contenaity of possesion; the whole procedure by the sheriff was “res inter alios acteif for the following reasons:
1st. The judgments, on which the executions were issued, were not produced.
2d. It does not appear by any returns by the sheriff, that he had ever levied executions on the land; or that he had done so, if at all, during the life of the ex-cutions.
3d. The sale of “five hundred acres to be taken off the most northwardly side of the widow’s dower right” was insufficient. Tlie-e had been no assignment of dower; and her potential right to dower was not subject to execution. Cer only right in possession was that of quarantine, and this did not extend beyond the “plantation;” Carney vs. Bunlain, IV Bibb, 217. Consequen'ly, she had no right of entry on the wood-land, except for estovers. The le >; il title to the whole tract descended to the heirs, and remained in them. Before assignment of dower, the widow had no transferable legal interest, iilie could not have vested any right in a lessee, by contract of lease; Tucker and wife vs. Yunce, II Marshall, 45S; of course, she could not maintain an nedon of ejectment for her dower, before ithad been assigned. It results, that the right to dower could not in this case, be transferred by sale under execution.
Nor did the assignment by the county court, after the sale, help the invalidity of the sale. The assign meni could not, by retroaction, make the sale valid, which, when made, was invalid. Nor liad the county court any right to assign dower on the application of the persons claiming under the sale. Dower can he assigned by a county court, only on the application of the widow or heirs, or some other person who holds a legal interest in the land.
*16 If (he rale should be construed to be a sale of the interest of the heirs, it would he equally invalid; because the. hind intended to be sold, could not be identified, as the.e had been no assignment of dower.
4th. The sale cf “five hundred acres to be taken off the most northwardly side or end of Alexander Shield’s part” was also ineffectual. His “part” could not be identified; because there had been no partition; and the county court bad no right to make partition on the application of persons who held no interest in the land.
It appears therefore, without noticing other objections to the sheriff’s deed, that it was properly excluded.
Nevertheless, the fact that possession of the plantation was delivered to Bryan and Stewart under the habere facias, was admissible to show, as far as such a fact might tend to show, that the possession of the widow bad been interrupted, and consequently, as far as her possession legally extended, that there was. not a possession of twenty years to entitle the plaintiffs on that alan-, to recover, if the possession cannot be dated Leycnd 17i)5.
But this fact would have only a very circumscribed and unimportant effect. There is no evidence, that the possession of the widow, extended beyond the plantation. It docs not appear, that the heirs who lived with her, were minors, or that she held possession for (Lem, of more land than that included in the plantation. Beyond that, as the right was in them, the possession would be considered in them to two extent of their right, unless there bad been proof to the contrary. Besides, Alexander’s possession was. curtailed only by too plantation occupied by the WluÓhí and by the joint right and possession of his co-l\eirs! Consequently, the execution of the habere facias, and the return upon it, cannot affect the heirs farther than to show the simple fact, that as to the plantation occupied by the widow, the possession was momentarily in Siewart, in 1812. /slexandcrSbifilds was not evicted; and the other heirs were not parties. ' Nor weré they, for reasons already suggested, privies to the habere facias, farther than the plantation was affected
*17 This case and that of McConnell vs. Bowdry’s he'rs, in IV Monros, are not analogous. In that - case, Mrs. Bowdry was in possession in fact, of the whole tract of land. The fact was proved. In this cas'e, no such fact is shown, and the law will not presume it. Consequently, except as to the plantation, the possession of the plaintiffs remained unbroken, and continued fiom, at least 17,95, until 18 25, when the intrusion was made upon it by Hall; and therefore, upon this ground alone, the plaintiffs had a right to recover. The cutting of house logs and the tapping of sugar trees, did not evict them.
The only ground on which the defendant could stand, is that furnished by the senior title of Oldham. But Oldham’s right of entry was barred by twenty yea s ad.e se possession, except as to the plantation; because tie posers'-on was interrupted only as to the plantation. Moreover, Oldham was barred entirely by a possession of seven years since the eviction in 1812.
The plaintiffs were actually settled on the land covered by Oldham's patent; and a continuation of that settlement for more than se\en years, will protect therti against Oldham’s patent, to the whole extent of the interference claimed by them. They claimed the whole two thousand acres. There was no settlement by Oldham, nor under his title; and therefore, the seven years bar applies conclusively to Oldham’s patent. The result is, that the circuit court erred in its instruction. The converse should have been the instruction.
But the court erred, even if hypothetically the principle of its instruction had been right. The instruction was peremptory and conclusive. It left nothing for the consideration of the jury.
For the reasons which have been given, Oldham’s patent cannot be used availably, as a subsisting outstanding title, showing that the right of entry is not in the plaintiffs.
As no title passed by the sheriff’s deed, there remains to the defendants no legal defence sufficient to bar the right of entry in the plaintiffs. As they had the title, their covered the land in contro very, and *18 the occasional usufruct by the defendants or by Stewart, did not oust or disturb that possession, because there was no settlement or enclosure by or under Stewart, within the boundary of the sheriff’s deed under that, or any other color of title, until 1825, when Hall made his settlement.
Monroe, for plaintiff; Mills and Brown, for defendants.
But if the sheriff’s deed could possibly be of any avail to the defendants, nevertheless the judgment of the circuit court should be reversed, for the error ifi instructing the jury, that Oldham’s patent protected the defendants.
Wherefore, the judgment is reversed, and the cause remanded for a new trial.